Filed 1/16/14  Marriage of Callister CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of LISA and KEVIN CALLISTER. | B242819 |
| KEVIN CALLISTER,<br><br>Respondent,<br><br>v.<br><br>LISA CALLISTER,<br><br>Appellant. | (Los Angeles County<br>Super. Ct. No. BD377699)<br><br>**ORDER MODIFYING OPINION<br>NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed herein on January 13, 2014, and not certified for publication, be modified as follows:

1.  On page 8, fourth paragraph, the last sentence reads as follows:

"Because $6,205.04 plus $1,354.10 equals $37,559.14, the total incurred by Kevin up until the January 23, 2012 hearing was $37,559.14."

It should read:

"Because $36,275.04 plus $1,354.10 equals $37,629.14, the total incurred by Kevin up until the January 23, 2012 hearing was $37,629.14."

Continued:

2.  On page 9, third paragraph, the last sentence reads as follows:

"So as of January 6, 2011, Kevin only incurred $37,559 in attorney fees."

It should read:

"So as of January 6, 2011, Kevin only incurred $37,629.14 in attorney fees."


3.  On page 9, fourth paragraph, beginning at line 6, the two sentences read as follows:

"The only amount which was supported by the bills and the testimony was $37,559.14.  Therefore Kevin can only request attorney fees of $37,559.14."

They should read:

"The only amount which was supported by the bills and the testimony was $37,629.14.  Therefore Kevin can only request attorney fees of $37,629.14."


The foregoing does not change the judgment.

---

**WOODS, Acting P. J.**               **ZELON, J.**               **SEGAL, J. (Assigned)**

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of LISA and KEVIN CALLISTER. | B242819 <br><br> (Los Angeles County <br> Super. Ct. No. BD377699) |
| KEVIN CALLISTER, <br><br> Respondent, <br><br> v. <br><br> LISA CALLISTER, <br><br> Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth Feffer, Judge.  Affirmed in part, reversed in part and remanded.

Paula S. Glickstein for Appellant.

Law Office of Anthony D. Zinnanti and Anthony D. Zinnanti for Respondent.

_____

Appellant Lisa Callister (Lisa) and Kevin Callister (Kevin) were married[1] and their son Chase was born in March 2000. In October 2002, Kevin filed a petition for marital dissolution. On August 15, 2003, an order of marital dissolution was entered. Lisa appeals from a post-judgment order made on January 23, 2012, ordering her, inter alia, to pay Kevin's attorneys fees of $45,000, travel expenses for Chase, and costs of a child custody evaluation. We affirm in part, reverse in part and remand.

*FACTUAL & PROCEDURAL BACKGROUND*

Lisa and Kevin were awarded joint and physical custody of Chase with a 50 percent time share. Lisa moved to Utah in March 2011. Chase was then attending fifth grade in public school in California, where Kevin lived with his new wife and baby daughter.

Kevin asked Lisa to allow him to enroll Chase in a private school in Thousand Oaks and offered to pay the tuition himself.

On May 13, 2011, Kevin filed an ex parte application for an OSC ( hereafter referred to as the May OSC) requesting additional custodial time and a psychological evaluation of Chase. A child custody evaluation was ordered and was performed by Dr. Gibbs. The parties each paid half of Dr. Gibbs' fee. Kevin also had a psychologist of his own choosing, Dr. Suzanne Dupee, conduct an evaluation of Chase.

The issues raised in the May OSC were heard on October 27, 2011. Lisa testified at the hearing about her relationship with Chase and the amount of time she spent with him. She testified about Chase's delicate emotional state. She claimed that Kevin placed Chase in a private school and took him on a cruise against her wishes. She testified she left her job in California because of a fear that she would lose her job due to an impending merger by her employer. She stated she had a job offer in Utah, moved, and then the job offer was withdrawn. Upon cross-examination by Kevin's counsel, she admitted writing a letter of resignation to her employer which cited an eating disorder and

---

[1]    There is no indication in the record of the date they were married.

conflicts with other employees, but did not state her fear of the merger. She also admitted that she had been arrested in January 2011 and that the job offer in Utah had been withdrawn due to the arrest.

Dr. Gibbs' report was submitted to the court. Counsel for Kevin argued that Lisa was not truthful in her examination by Dr. Gibbs and that had Dr. Gibbs known the true facts he would have reached different conclusions. Counsel also alleged that Lisa had an additional arrest in 2001.

The court then ordered the remainder of hearing closed and the transcript sealed in the best interests of Chase pursuant to Family Code section 214.

The court made factual findings regarding custody of Chase, but those findings were made under seal. It reserved ruling on the attorney fees and costs for the custody evaluation and set a hearing date in December 2011.

On November 23, 2011, Kevin filed an application for an OSC for modification of child support (hereinafter referred to as the November OSC). He requested that Lisa pay him child support and Chase's travel expenses to Utah. He requested attorney fees in the amount of "$55,000 plus" and costs.

Kevin stated in a supporting declaration that he was laid off from his prior job in biotech pharmaceuticals in April 2009 and that he now operates his own business teaching music and swim lessons. Chase was enrolled in a private school near Kevin's home. Kevin agreed to pay Chase's tuition. Kevin filed an Income and Expense Declaration showing a net monthly income of $629.20.

Lisa filed an opposition to the November OSC, citing Kevin's affluent lifestyle. She requested more custodial time with Chase in Utah, and for Kevin to share in the travel costs. Lisa submitted an Income and Expense declaration showing $10,000 salary per month and debts of $90,000.

On December 1, 2011, Kevin filed a response to Lisa's brief, claiming inter alia, that he was forced to bring the May OSC to obtain court orders regarding psychological treatment for Chase. He agreed to modifications to the custody schedule, but claimed the

custody evaluation was necessitated by Lisa's move to Utah and that she should pay for Dr. Gibbs' fee.

The December 2011 hearing date was continued until January 23, 2012.

On January 11, 2012, Lisa filed a responsive declaration stating that she would consent to sharing the costs of Chase's travel but that she did not consent to private school tuition. She argued that Kevin had the capacity to earn more based upon his education and prior job experience and that public school would be better for Chase.

On January 23, 2012, Lisa's counsel was not present due to a death in the family and substitute counsel appeared. Lisa was also not present. The court agreed not to take evidence and to issue temporary rulings on the issues of custody and visitation until the next hearing. Kevin's counsel then indicated that he would be making a supplemental request for attorneys fees. The court suggested that Kevin's counsel then file a supplemental declaration. However, Lisa's substitute counsel then stated, "I would suggest that the court make orders today. I don't see the need to drag the case on and incur more fees. . . . I don't think any notice to counsel would have made today any less important. . . ." The court then proposed the parties each submit pleadings because "[t]hat way it levels the playing field since [Lisa's] counsel is not here." Lisa's substitute counsel stated, "I would ask we submit on the paperwork, your Honor. I think that will reduce fees for everyone and terminate this matter which is the goal."

The court then stated, "So there won't be any argument. Some of these are reserved issues left over and were not decided after the child custody evaluation hearing," that is, the custody schedule, the costs of the custody evaluation, child support and attorney fees and costs. The court then referred to the closed hearings without going into specifics. It did refer to Lisa's lack of candor about the reasons for her move to Utah, and that Lisa had deliberately misled the child custody evaluator by giving false answers and fabricating information. It considered the parties' income and expense declarations and noted the disparity between Lisa's and Kevin's income.

The court then ordered, inter alia, that Lisa pay all travel expenses for Chase, reasoning that Lisa's move was in bad faith, that Lisa chose to leave a well-paying job in

Los Angeles, and that it would be inequitable to shoulder Kevin with the burden of travel costs.

It ordered Kevin to pay for the private school tuition. It declined to impute minimum wage to Kevin, stating "[T]his is a child who needs, or has needed psychological attention and mental health counseling. [Kevin] being able to work at a flexible job, from home, enables him to accommodate those needs at this time."

The court issued a Statement of Decision which ordered Lisa to contribute attorneys fees and costs, finding that Lisa acted in bad faith which was not in the best interest of Chase and which caused Kevin to incur attorney fees. It also allocated Dr. Gibbs' fees to Lisa since her move was the reason the child custody evaluation was conducted.

The Statement of Decision also provided: "The court finds that there is a disparity in income between the parties, and finds that [Kevin's] attorney fees were occasioned solely by [Lisa's] bad faith conduct in moving to Utah, generating a child custody evaluation report, not being honest and forthcoming with the evaluator in material respects such as the reason she left the job in Los Angeles, the existence or nonexistence of a valid job offer in Utah, or the withdrawal of said offer, and the reasons the offer was withdrawn which includes criminal conduct by [Lisa] occurring contemporaneously with this dispute in child custody. [Lisa's] conduct in this case was the epitome of bad faith. She has caused detriment to the minor child. She has failed to respond in an appropriate fashion to the emergency that resulted from the minor child's mental health issues, and repeated numerous instances of bad faith conduct has permeated this child custody dispute. In this case this dispute was generated almost entirely, if not entirely, but [Lisa's] bad faith conduct. The Court has absolutely no hesitation in finding that [Lisa's] conduct runs afoul of Family Code § 271. This is an instance where a parent/litigant placed her own selfish concerns well above that of the well being of the child . . . in this case, the action was largely driven by [Lisa's] bad faith conduct which permeated every aspect of this case that did cause attorneys' fees to be needlessly incurred by [Kevin]."

The court ordered Lisa to pay $15,000 of Kevin's attorney fees and costs pursuant to Family Code sections 2030 and 2032 and $30,000 of Kevin's attorney fees and costs as sanctions under Family Code section 271, for a total of $45,000, to be paid directly to Kevin's counsel in monthly installments of $1,250 per month. It also ordered that she pay Kevin $10,202 for his share of the joint custody evaluation performed by Dr. Gibbs, in monthly installments of $750 per month. Kevin was ordered to bear the expense of Dr. Dupee's exam.

Lisa appeals, contending that Family Code section 271 sanctions should not have been ordered because she did not have notice and an opportunity to be heard, and furthermore that the imposition of sanctions is an unreasonable financial burden on her. She also contends that the court abused its discretion by not considering relevant factors for the award under Family Code sections 2030 and 2032, and that she should have been awarded travel expenses for visitation. Finally, she contends the trial court should not have ordered her to pay $55,873 for attorneys fees because that amount included expert witness fees which Kevin had already unsuccessfully requested.

*DISCUSSION*

1. *Travel expenses*

Family Code section 4062 provides for certain additional costs to be included in child support orders. Subdivision (b) provides that the court may order "travel expenses for visitation" as additional child support. Thus, the court has the discretion to order expenses for visitation payable from one parent to the other. (*In re Marriage of Gigliotti and Prostano* (1995) 33 Cal.App.4th 518, 528-529.)

Lisa contends that the court failed to consider the best interests of Chase in denying her request to apportion the travel expenses between her and Kevin.

It is very clear from the court's comments that it considered Lisa's lack of candor about the reasons for the move, and felt that the move was one made solely for selfish reasons, not for economic reasons, nor in the best interests of Chase. Evidence that Chase loved spending time with Lisa does not mean that the costs of the trips to Utah should be shared equally; it demonstrates that the move was not in his best interests

because now he must travel on a plane in order to see his mother. Therefore, the court's order for Lisa to pay travel expenses was a reasonable exercise of discretion.

## 2. Attorneys fees

### a. Computation of fees

Lisa contends the court erroneously computed the amount of attorneys fees sought by Kevin.

The court ordered that Lisa pay $45,000 in fees to be paid in installments directly to Kevin's lawyer and to pay Kevin $10,202 in installment payments for his share of the cost of Dr. Gibbs' custody evaluation.

The court's order clearly indicates that because it felt Lisa's move was the reason for the May and November OSCs, the hearings and the resulting custody evaluations, Lisa should pay Kevin's attorneys fees, and reimburse him for the one-half share of Dr. Gibbs' fee ($10,202).[2] It ordered Kevin to pay for Dr. Dupee's fee because he engaged her.[3]

Kevin's November 23rd OSC sought attorneys fees of "$55,000 plus" and costs "incl with fees." In his supporting declaration, he stated, "In addition to requesting that Lisa pay my attorney fees based on the difference in our earnings, I am requesting that the Court base the award of attorney fees on the fact that Lisa's actions were the sole reason I wound up incurring over $36,000 in fees to my attorney, paid Dr. Gibbs $10,202 for the custody evaluation, paid my own expert, Dr. Dupee, $8,250.00 and paid Court

---

[2]     When Kevin's counsel indicated that the parties had split the fee to Dr. Gibbs, the court stated, that Lisa had to reimburse Kevin.

[3]     The court ordered that Lisa pay the entire cost of Dr. Gibbs' evaluation because Lisa "caused the need for a child custody evaluation . . . and [Lisa] was not even candid or honest with Dr. Gibbs on several key issues. Further, there is a disparity in income between the parties so it's just and appropriate for [Lisa] to pay the entire costs of the Gibbs evaluation. As to [Kevin's request] that [Lisa] contribute to the costs of Dr. Dupee's fees, the court denies that request. [Kevin] hired Dr. Dupee and is solely responsible for Dr. Dupee's fees."

fees for trial. . . . The attorney fees and costs and fees paid to others, and [c]osts I've paid, total over $55,000."

Kevin's attorney submitted a declaration which stated that "as of this date" (the signature line of the declaration curiously indicates the date as February 22, 2011, but is probably sometime closer to November 23, 2011) Kevin has incurred $36,275 in fees and costs to her office, with an outstanding balance owed of $11,003.90. She also lists the costs of Dr. Gibbs' and Dr. Dupee's evaluations as $10,202 and $8,250, respectively and court fees of $1,146. She then concludes that Kevin has incurred a total of $55,873.04 in attorney fees, evaluator fees, expert witness fees, and Court fees in these proceedings, . . . ." The $36,275 added to the costs of the evaluations and court fees equals $55,873.04.

She attached copies of bills to Kevin dating back to May 2011 for April consultations. This amount includes time spent on the May OSC.

In Kevin's Attachment 15 to his Income and Expense Declaration dated November 21, 2011, he stated that he had paid his attorney $25,271.14 as of November 21, 2011 and owed $11,003.90, which totals $36,275.04. He then indicated $44,869.14 costs and fees paid as of November 21, 2011 and $11,003.90 owed, which totals 55,873.04.

In a brief filed by Kevin on January 6, 2012, in opposition to Lisa's brief, he indicated that as of January 5, 2011, he owed his attorneys $12,358 and will incur additional fees and costs related to the January 23, 2012 hearing. Presumably this means he incurred an additional $1,354.10 after November 21, 2011. Because $6,205.04 plus $1,354.10 equals $37,559.14, the total incurred by Kevin up until the January 23, 2012 hearing was $37,559.14.

At the January 23rd hearing, Kevin's counsel requested that Lisa pay all attorneys fees and costs, "which are now higher than the amount set forth on his income and expense declaration" which was more than $58,000. Kevin's counsel argued that Lisa's OSC for the move-away caused Kevin to incur excessive fees including retaining Dr. Dupee and Dr. Gibbs.

Later, after listing the reasons why Lisa's actions were in bad faith, the court stated, "So the court does grant the total amount of attorneys' fees of $45,000 to [Kevin] from [Lisa.] Of that, $15,000 of it is awarded pursuant to Family Code section[s] 2030 and 2032 under the need-based analysis. $30,000 is awarded under Family Code section 271. So the total is the same, $45,000."

Later when Kevin's counsel asked, "Your Honor, is this the entire $65,202 . . . or just the 45?" And the court answered, "45. $15,000 of that is on the need-based analysis. . . . $30,000 of that is based on 271. . . then separately [Lisa] is responsible for the entirety of Dr. Gibbs' fees. . . ."

Kevin contends in his respondent's brief that he had incurred $47,278.94 based on his attorney's declaration that Kevin had paid $36,725.04 and had a balance due of $11,003.90 as of November 23, 2011. This is not supported by the record. Kevin's Income and Expense Declaration shows $36,725.04 was incurred to date, and that Kevin had paid it all except the $11,003.90. This is borne out by adding the amounts in the "Total amount of this bill" section in the attached bills submitted by Kevin's attorney. So as of January 6, 2011, Kevin only incurred $37,559 in attorney fees.

The $58,000 and the "$55,000 plus" figures mentioned by Kevin and the court appear to include the $10,202 fee to Dr. Gibbs. Based upon all the supporting documentation and the court's comments about its intent, it appears the court mistakenly included Dr. Gibbs' fee in the attorney fee award pursuant to Family Code sections 271 and 2032. There is no documentation that Kevin owed his attorney over $55,000 at the time of the hearing. The only amount which was supported by the bills and the testimony was $37,559.14. Therefore Kevin can only request attorney fees of $37,559.14. This amount does not include the cost of Dr. Dupee's exam, $8,250, which Kevin is to bear, or the $10,202 Kevin paid to Dr. Gibbs, which the court ordered Lisa to pay to Kevin.

b. *Notice of sanctions request*

Family Code section 271 provides for an award of attorney's fees and costs as a sanction when a party or attorney "furthers or frustrates the policy of the law to promote settlement of litigation." In making such an award, the court shall consider the parties'

financial situations, and cannot impose a sanction "that imposes an unreasonable financial burden."  Subdivision (b) of that section provides that such an award "shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard."

Lisa contends that she did not receive proper notice that sanctions under Family Code section 271 were being sought.  Upon our review of the record, we find that Lisa's contention of lack of notice is without merit.

On his November OSC form FL300, Kevin checked the box which indicates that attorneys fees are being sought but does not indicate the statutory authority for those fees. To be fair, none is required on the form, only the amount of fees sought is to be filled in. However, the memorandum of points and authorities filed by Kevin in support of his OSC states in its heading numbered "III": "The Court has the authority to order [Lisa] to pay all attorney fees and costs incurred by [Kevin ] in these proceedings."  It then recites provisions of the following statutes:  Family Code section 2030, subdivision (a) and Family Code section 271.

At the January 2011 hearing, Kevin's lawyer discussed the request for fees, saying, "[B]ased on the circumstances of this case and the court's findings, we're requesting that based upon relevant law, including Family Code section 271, that [Lisa] be ordered to pay all attorneys' fees and costs. . . ."

Lisa's counsel argued that "Correct me if I'm wrong, Your Honor, I've never seen a 271 notice.  I've never seen any indication there was not [sic] an intent to seek fees under 271."

The court noted that at the October 27th hearing, the attorney fee issue was already before the court and the hearing was continued.  Kevin then filed the new November OSC and specifically cited section 271.[4]

---

[4]     The court stated, "So notice is the FL-300 [application for Order to show cause form] which indicates attorneys' fees are sought.  Again, attorneys' fees were already before the Court, but [Kevin] filed a new OSC formally requesting attorneys' fees on

Lisa's counsel then argued that notice should have been given prior to the November OSC, stating, "I don't think that the notice in the actual motion gives the opportunity that the code has in mind which is that people will try to mitigate the situation prior to having to file that."

Not only did Lisa have notice at the October 2011 hearing that attorneys fees were going to be discussed at the next hearing, Kevin's November OSC clearly cited Family Code section 271. Although Kevin did not cite any further argument or case law in this memorandum of points and authorities, Lisa was clearly put on notice that such sanctions would be sought.

At the January 2011 hearing, Lisa's counsel insisted that the court proceed with the issue of attorney fees. Other than the clearly erroneous contention that there was no indication that fees would be sought under Family Code section 271, Lisa appears to argue that she was entitled to notice before she moved away, because she might have then considered mitigating the need for the attorneys fees which were incurred after she moved away. The statute, however, provides for notice before the imposition of fees, to allow the opposing party the opportunity to be heard. Family Code section 271 allows sanctions to be assessed at the end of the lawsuit when the extent and severity of the party's bad conduct can be judged or during the course of the litigation to encourage better behavior. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1515-1516.) We find Lisa had adequate notice that Family Code section 271 sanctions would be sought and had an opportunity to be heard.

*3. Unreasonable financial burden*

Family Code section 271 provides that the court may base an award of attorney fees and costs on: (1) the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement and to reduce the costs of litigation by encouraging cooperation; (2) evidence concerning the parties' incomes, assets and

---

November 23, 2011, and in the memorandum of points and authorities, the OSC specifically states the statutory basis under which fees were sought specifically, Family Code § 271. So notice was given."

liabilities; and (3)whether the award constitutes an unreasonable financial burden on the party against whom it is imposed. The party requesting the fee need not demonstrate a financial need for the award.[5]

On appeal, we will not reverse an order for sanctions unless the trial court abused its broad discretion. (*In re Marriage of Petropolous* (2001) 91 Cal.App.4th 161, 178.)

Lisa contends that her income and expense declaration demonstrates the court's sanctions order will constitute an unreasonable financial burden, making her unable to survive financially because she moved to Utah. Her income and expense declaration shows earnings of $10,000 per month, $700 in deposit accounts, debt of $15,000 and an outstanding balance of $31,000 in attorney fees. She had monthly expenses of $7,126 which included a $160 health insurance premium which Kevin was paying. She contends she is unable to afford the expense of airfare for Chase to Utah and the costs of visiting him in Los Angeles based upon her current salary.

The court reviewed Lisa's income and expense declaration and found that she had "quite a bit of discretionary spending" which included $500 per month for "entertainment, gifts and vacation" and $1,000 for charitable contributions as well as $400 per month of eating out.

Lisa's counsel requested that the court consider Kevin's new wife's income and also requested that the court impute minimum wage to Kevin. The court denied both requests.

---

[5]     Family Code section 271 provides: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and , where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against who the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

In this case, the court clearly considered the first factor enumerated in Family Code section 271, that is, the extent to which Lisa's move contributed to the attorney fees. It did review Lisa's income, assets and liabilities, determining that she spent too much on discretionary items. It found a disparity in income but did not determine whether a $30,000 fee award was reasonable based on Lisa's assets and liabilities, even assuming her discretionary expenses were excessive. We therefore conclude that the court did not make the proper determination under Family Code section 271. The matter must be remanded for reconsideration of that portion ($30,000) of the fee award.

*4. Award under Family Code sections 2030 and 2032*

Lisa also contends that the court did not exercise its discretion in awarding the fees to Kevin pursuant to Family Code section 2030.

Family Code section 2030 provides that "the court shall ensure that each party has access to legal representation, . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessment, one party. . . to pay to the other party. . . whatever amount is reasonable necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding. [¶] . . . When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. . . ."

Family Code section 2032 provides the court may make an award under Family Code sections 2030 and 2031 where the making and the amount of the award "are just and reasonable under the relative circumstances of the parties." Subdivision (b) of Family Code section 2032 provides guidelines for "just and reasonable" stating "the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective

parties described in [Family Code] Section 4320. . . . Financial resources are only one fact for the court to consider in determining how to apportion the overall cost of the litigation equitable between the parties under their relative circumstances."

Family Code section 4320 provides for several circumstances to be considered for spousal support, including the marketable skills of the supported party, the ability of the supported party to engage in gainful employment, the ability of the supporting party to pay spousal support, the extent to which the supported party's present or future earning capacity is impaired by periods of unemployment incurred during the marriage and the obligations and assets of each party.

A court has considerable latitude in fashioning or denying a fee award but its decision must reflect an exercise of discretion and a consideration of the appropriate factors. (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219.)

In addition to assessing need and ability to pay, the family court may consider the other party's trial tactics. (*In re Marriage of Tharp* (2011) 188 Cal.App.4th 1295, 1313-1314.)

The considerations of Family Code sections 2030 and 2032 are different from Family Code section 271. Family Code section 2030 requires findings of "disparity in access and ability to pay." The purpose of Family Code section 2030 is parity, not the redistribution of money from the party with the greater income to the other party. (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 252.) "While no particular language is required in an order awarding attorney fees under [Family Code] sections 2030 and 2032, the record (including, but not limited, to the order itself), must reflect an actual exercise of discretion and a consideration of the statutory factors in the exercise of that discretion." (*Alan S., supra,* at p. 254.)

The court's comments demonstrate that it did consider the disparity in incomes of the parties. It repeatedly referred to the need-based analysis of Family Code section 2030. It stated on the record that Kevin's flexible job did allow him to take Chase to necessary appointments. The court clearly felt that the attorneys fees were incurred solely because of Lisa's move to Utah, which it deemed to be unnecessary and self-

serving.  The court, however, did not make a finding about Lisa's ability to pay and whether she has adequate financial resources.

Therefore, we conclude the order awarding attorneys fees under Family Code sections 2030 and 2032 was in error and must be reconsidered.

*DISPOSITION*

The matter is remanded to the superior court to reconsider the amount of attorney fees pursuant to Family Code sections 2030, 2032 and 271, in accordance with the factors enumerated in those statutes.  In all other respects, the orders of January 23, 2012 are affirmed.  Each side is to bear its own costs on appeal.


**WOODS, Acting P. J.**


**We concur:**


**ZELON, J.**                                        **SEGAL, J.** [*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.